Mark Eisen (SBN - 289009)
meisen@edelson.com
EDELSON PC
555 West Fifth Street, 31st Floor
Los Angeles, California 90013
Tel: 213.533.4100
Fax: 213.947.4251

Jay Edelson*
jedelson@edelson.com
Rafey S. Balabanian*
rbalabanian@edelson.com
Benjamin S. Thomassen*
bthomassen@edelson.com
Jack Yamin*
jyamin@edelson.com
Chandler R. Givens*
cgivens@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

*Pro hac vice admission to be sought.

Attorneys for Plaintiff and the Putative Class

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| MIGUEL GARCIA, individually and on behalf of all others similarly situated,<br><br>   *Plaintiff*,<br><br>   v.<br><br>ENTERPRISE HOLDINGS, INC., a Missouri corporation, and LYFT INC. d/b/a Zimride, a Delaware corporation,<br><br>   *Defendants*. | Case No.<br><br>**COMPLAINT FOR:**<br><br>1. **Violations of the California Privacy Act, Cal. Penal Code §§ 630,** *et seq.*<br><br>**DEMAND FOR JURY TRIAL**<br><br>**CLASS ACTION** |

Plaintiff Miguel Garcia ("Garcia" or "Plaintiff") brings this Class Action Complaint and Demand for Jury Trial ("Complaint") against Defendants Enterprise Holdings, Inc. and Lyft, Inc. d/b/a Zimride (collectively referred to herein as "Defendants" or "Zimride") to put an end to Zimride's unlawful practice of disclosing its users' personal information, and to obtain redress for such conduct. Plaintiff, for his Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by his attorneys:

## NATURE OF THE ACTION

1. Enterprise Holdings is an American holding company that owns Enterprise Rent-A-Car, National Car Rental, and Alamo Rent a Car, among others. In 2013, Enterprise Holdings acquired Zimride, Inc. (now known as Lyft, Inc.).[1]

2. Zimride is a company that provides online ridesharing and carpooling services. Users log in to Zimride through their Facebook account (*i.e.*, they must enter a Facebook username and password) and can input details about an upcoming trip to solicit fellow passengers, or purchase a seat in a ride previously submitted by another Zimride user.

3. What Zimride fails to tell its users, however, is that it surreptitiously transmits their trip details (along with other sensitive personal information about the individual) to a third party data analytics company called 'Mixpanel.'

4. Data analytics companies, like Mixpanel, have business models that rely on the mass collection of disparate pieces of uniquely identifying information and online behavioral data of consumers to compile comprehensive profiles on a person's entire digital lives. Among other things, these profiles can be used for targeted advertising, can be sold as a commodity to other data brokers, or mined to produce valuable reports.

5. As explained herein, Zimride's decision to disclose its users' sensitive personal

---

[1] Zimride.com's logo includes the tag line "Zimride by Enterprise," and likewise, under an "About Us" heading, Zimride.com describes itself as "Zimride by Enterprise, the industry leading rideshare service". Additionally, on a "Contact Us" page, Zimride.com lists the following address: "Zimride c/o Enterprise Holdings, Inc. 600 Corporate Park Dr. St. Louis, MO 63105".

CLASS ACTION COMPLAINT 2

information not only demonstrates a brazen disregard for their privacy rights, it also violates the California Privacy Act. Cal. Penal Code §§ 630, *et seq.*.

**PARTIES**

6. Plaintiff Miguel Garcia is a natural person and citizen of the State of California.

7. Defendant Lyft, Inc. (d/b/a Zimride) is a corporation organized and existing under the laws of the State of Delaware with its principal place of business located at 548 Market Street. #68514, San Francisco, California 94104. Defendant Lyft is a direct subsidiary of Defendant Enterprise Holdings, and jointly operates Zimride. Zimride does business throughout the State of California, this District, and the United States.

8. Defendant Enterprise Holdings, Inc. is a corporation organized and existing under the laws of the State of Missouri with its principal place of business located at 600 Corporate Park Drive, St. Louis, Missouri 63105. Defendant Enterprise Holdings is the direct parent of Defendant Lyft, and jointly operates Zimride. Enterprise does business throughout the State of California, this District, and the United States.

**JURISDICTION AND VENUE**

9. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2), because (i) at least one member of the Class is a citizen of a different state than Defendants, (ii) the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and (iii) none of the exceptions under that subsection apply to this action.

10. This Court has personal jurisdiction over Defendants because they conduct business in California and the unlawful conduct alleged in the Complaint occurred in, was directed to, and/or emanated from California.

11. Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant Lyft, Inc. resides in this District and because the decisions resulting in the unlawful conduct alleged in this Complaint originated in and emanated from this District. Venue is additionally proper because Defendant Lyft, Inc. maintains its headquarters and principal place of business in this District.

Moreover, Plaintiff Garcia resides in this District.

## INTRADISTRICT ASSIGNMENT

12. Pursuant to Civil Local Rule 3-2(d), this case should be assigned to the San Francisco Division.

## FACTUAL BACKGROUND

### I. A Brief Overview of Zimride's Services.

13. Founded in 2007, Zimride now has over 350,000 users and is one of the largest carpooling and ridesharing services in the United States.[2] Zimride heavily markets to college students, and has partnerships with university campuses across the country to provide its services.

14. Enterprise Holdings acquired Zimride in 2013 for an undisclosed amount. At the time, Enterprise Holdings issued a press release stating that, "This acquisition is the perfect complement to our existing car-sharing, vanpooling and car rental services … With Zimride's industry-leading technology, we will be able to even further enhance our offerings and provide a total transportation solution to our partners and customers worldwide."[3]

#### *1. Users log in to Zimride through their Facebook account and enter details about upcoming trips.*

15. To use Zimride's services, a person first navigates to its website—www.Zimride.com. There, the user enters a starting point, a destination, and the desired date and time of departure. (*See* Figure 1) (showing Zimride's main homepage).

---

[2] Zimride Help & Support, http://help.zimride.com/customer/portal/topics/73537-for-drivers (last accessed February 4, 2014).

[3] Enterprise Holdings Acquiring Zimride Ride-Matching Program, http://www.enterpriseholdings.com/press-room/enterprise-holdings-acquiring-zimride-ride-matching-program.html (last accessed February 4, 2014).



(**Figure 1.**)

16. To proceed with a search for existing rides, or to post a new ride, the user must sign-up using their Facebook account's username and password. (*See* Figure 2) (showing the Facebook sign-up screen on Zimride's webpage).



(**Figure 2.**)

17. During the sign-up process, a display screen says that "Zimride will receive the following info: your public [Facebook] profile, friend list, email address, birthday, work history, education history, events, hometown, interests, current city, personal description and likes. (*See* Figure 3.)

> **Zimride** will receive the following info: your public profile, friend list, email address, birthday, work history, education history, events, hometown, interests, current city, personal description and likes.

(**Figure 3.**)

CLASS ACTION COMPLAINT                                    5

18. Users looking to purchase a seat in a pre-existing ride are then presented with trips that match their criteria. On the other end, users posting upcoming trips are alerted if a potential passenger has requested a seat in their car.

19. At no time during the sign-up process is the Zimride user ever informed that the details of their trip, as well as other sensitive personal information, are sent to Mixpanel.

**II. Zimride Discloses its Users' Personal Information to Mixpanel.**

20. Once a user submits their upcoming trip information to Zimride (*i.e.*, starting point, end point, and data/time of departure), it is digitally sent to third party data analytics company Mixpanel (this is true regardless of whether the trip information is submitted on Zimride's web or mobile website). Included in that message is the following information about the person:

    (i) gender;

    (ii) age;

    (iii) zip code;

    (iv) metropolitan region;

    (v) a link to a Zimride webpage that shows full details about the user's trip as well a link to their Facebook profile; and

    (vi) an alphanumeric "Distinct ID" identifier.

21. The last two items in the list above—the Zimride trip webpage and the Distinct ID—warrant special attention, and both are discussed below.

    ***1. Data analytics companies rely on unique identifiers (like the Distinct ID) to create digital dossiers on consumers and their online behaviors.***

22. Today's average consumer uses more than one device to access the Internet to do things like view digital content or make online purchases. This creates challenges for online advertisers and analytics companies. Namely, to gain a broad understanding of a given consumer's behavior across all of the devices that he or she uses, these companies must find ways to "link" their digital personas. The primary solution has been to use "unique identifiers" to connect the dots. For Mixpanel, that unique identifier is the Distinct ID.

23. According to its website, Mixpanel can "keep track of actions in [its client's] application right down to the individual customer level … using a property called distinct_id." Mixpanel advises that the Distinct ID "can (and in most cases should) be included with every event [its clients] send to Mixpanel to tie it to a user … [because it] plays a vital role across most Mixpanel reporting."

24. Mixpanel's website also says that, "Distinct_id plays a dual role in People analytics. Firstly, it is the unique identifier for that part of the tool. Data sent to the people section of Mixpanel is dispatched to a distinct_id. If the id already has a People record tied to it, then the call modifies or updates the existing entry. If the id does not already exist, a new entry is created for that id."

25. In other words, Mixpanel uses the Distinct ID to identify individual consumers to add behavioral information (e.g., upcoming travel plans, in the case of Zimride) to his or her existing profile. Or, in the case of a non-existent user, to begin creating a profile on the individual.

26. The problem with Zimride sending Mixpanel a link to a webpage showing: (i) its user's trip details along with (ii) a link to their Facebook profile, is that Mixpanel is then able to extract all available information from the user's Facebook profile and attribute it to a Distinct ID. In this way, a huge swath of data (like name, address, e-mail address, information about the individual's likes and dislikes) can easily be funneled into the user's Mixpanel profile.

### 2. *Mixpanel stores and processes an incredible amount of information on consumers.*

27. Mixpanel claims that it has built "the most advanced analytics platform for mobile and web," and that it analyzes "17 billion actions every month." Mixpanel profiles contain a vast array of private information on consumers. A graphic from Mixpanel's website, shown in Figure 4 below, is illustrative of this point.



(**Figure 4.**)

28.  <u>Figure 4</u> shows a disturbing example of a consumer's profile from an informational video on Mixpanel's website. The profile is that of a 16-year-old girl from China, and it lists her: full name, e-mail address, city, and specific information about a book that she purchased.[4] Presumably similar profiles are created about Zimride users when their information is transmitted to Mixpanel, except that they additionally contain a record of the individuals' past and future carpooling routes, as well as data from their Facebook profiles.

29.  In light of the above, it becomes evident that by transmitting users' highly sensitive personal information—including specific data about their upcoming carpooling/transit routes—to Mixpanel, Zimride has engaged in a flagrant violation of its users' privacy.

> **2.  The California Privacy Act prohibits the disclosure of consumers' personal information collected by companies for the purpose of providing ridesharing and carpooling services.**

30.  When the carpooling and ridesharing protection provisions were added to the California Privacy Act in 1990, the sponsor wrote, "As private and public ridesharing companies

---

[4]   Mixpanel People, https://mixpanel.com/people/ (last accessed February 4, 2014). Because it appears that Mixpanel has used a real person's private information in their promotional materials, and that person is listed as a minor, certain data has been redacted to protect her privacy.

proliferate, the need is increasing to protect the confidentiality of the information these companies have access to or acquire."[5] In the digital era, the need for such protections are more pronounced than ever before.

31. Within the past several years, the privacy risks associated with disclosing the geolocation data of consumers have taken center stage. Among these risks: The threat of stalkers gaining access to the data, the possibility of government intrusion,[6] or exposure (e.g., from a data breach) to the world of a person's daily comings and goings. All of these are threats are implicated in Zimride's disclosures of its users' personal information—disclosures that also trigger the statutory protections of the California Privacy Act.

### III. Plaintiff Miguel's Experience with Zimride's Services.

32. Plaintiff Garcia signed-up on his computer for Zimride's services in July 2012, and in August 2012, submitted details for a ride between southern and northern California. He subsequently submitted ride information in May and December of 2013 through Zimride's mobile website for rides between southern and northern California.

33. On information and belief, each time that Plaintiff Garcia used Zimride's services, his personal information (as explained in Section II above) were transmitted to third party analytics company Mixpanel without his knowledge or consent.

## CLASS ALLEGATIONS

34. **Class Definition**: Plaintiff Garcia brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and (3) on behalf of himself and a class of similarly situated individuals, defined as follows:

---

[5] Assembly Committee on Public Safety, April 17, 1990. AB 3984.
[6] For example, Recent National Security Agency (NSA) documents uncovered by the New York Times show that the agency targets the collection of this type of data when investigating individuals. Spy Agencies Scour Phone Apps for Personal Data, http://www.nytimes.com/2014/01/28/world/spy-agencies-scour-phone-apps-for-personal-data.html#document/p10/a142016 (January 27, 2014).

> All individuals and entities (1) residing in the State of California; (2) who have posted a ride or searched for a ride through the Zimride platform; (3) who had their personal information disclosed by Zimride to Mixpanel; and (4) who did not elect (through Zimride) to publically share his or her ride data on Facebook.

Excluded from the Class are (1) Defendants, Defendants' agents, subsidiaries, parents, successors, predecessors, and any entity in which the Defendants or their parents have a controlling interest and their current and former employees, officers, and directors, (2) the Judge or Magistrate Judge to whom this case is assigned and the Judge's or Magistrate Judge's immediate family, (3) persons who execute and file a timely request for exclusion, (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released, and (5) the legal representatives, successors, or assigns of any such excluded person.

35. **Numerosity**: The exact number of members of the Class is unknown to Plaintiff at this time. However, Zimride has thousands of users who are Class members throughout the country, making joinder of each individual member impracticable. Ultimately, members of the Class will be easily identified through Zimride's records.

36. **Commonality and Predominance**: Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting only individual members, including:

    a) whether Zimride intentionally disclosed Plaintiff's and the Class's personal information to third party data analytics company Mixpanel;

    b) whether Zimride's conduct described herein constitutes a violation of the California Privacy Act, Cal. Penal Code § 637.6; and

    c) whether Zimride violated Plaintiff's and the Class's right to privacy.

37. **Typicality**: Plaintiff's claims are typical of the claims of the other members of the Class. Plaintiff and the Class sustained damages as a result of Zimride's uniform wrongful conduct during transactions with Plaintiff and the Class. Plaintiff's claims are typical of the claims of all of the other members of the Class.

38. **Adequate Representation**: Plaintiff will fairly and adequately represent and protect

the interests of the Class, and he has retained counsel competent and experienced in complex litigation and class actions. Plaintiff has no interests antagonistic to those of the Class, and Zimride has no defenses unique to Plaintiff. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and they have the financial resources to do so. Neither Plaintiff nor his counsel have any interest adverse to those of the other members of the Class.

39. **Policies Generally Applicable to the Class**: This class action is also appropriate for certification because Zimride has acted or refused to act on grounds generally applicable to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and making final injunctive relief appropriate with respect to the Class as a whole. Zimride policies challenged herein apply and affect the members of the Class uniformly and Plaintiff's challenge of these policies hinges on Zimride's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

40. **Superiority**: This class action is appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy and joinder of all members of the Class is impracticable. The damages suffered by the individual members of the Class will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Zimride's wrongful conduct. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Zimride's misconduct. Even if members of the Class could sustain such individual litigation, it would not be preferable to a class action because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

41. Plaintiff reserves the right to revise the foregoing "Class Allegations" and "Class

Definition" based on facts learned through additional investigation and in discovery.

**FIRST CAUSE OF ACTION**
**Violations of the California Privacy Act, Cal. Penal Code §§ 630, *et seq.***
**(On behalf of Plaintiff and the Class)**

42. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

43. Zimride is a business engaged in the provision of carpooling and ridesharing programs as defined by the California Privacy Act, Cal. Penal Code § 637.6(b).

44. Under the California Privacy Act, "No person who, in the course of business, acquires or has access to personal information concerning an individual, including, but not limited to, the individual's residence address, employment address, or hours of employment, for the purpose of assisting private entities in the establishment or implementation of carpooling or ridesharing programs, shall disclose that information to any other person or use that information for any other purpose without the prior written consent of the individual." Cal. Penal Code § 637.6(a)

45. As described in detail in Section II above, Zimride disclosed and continues to disclose the personal information of Plaintiff and members of the Class to third party analytics company Mixpanel without Plaintiff's or Class members' prior express consent, all in violation of the California Privacy Act, Cal. Penal Code § 637.6(a)

46. As a result of Zimride's unlawful disclosure of their personal information, Plaintiff and the Class have had their statutorily defined right to privacy violated. Plaintiff seeks an injunction to prohibit Zimride from releasing his and the Class's personal information in the future, as well as the statutory damages available under the California Privacy Act, Cal. Penal Code § 637.2(a)(1).

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Miguel Garcia on behalf of himself and the Class, respectfully requests that this Court enter an order:

A. Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiff Garcia as class representative, and appointing his counsel as Class Counsel;

CLASS ACTION COMPLAINT 12

B. Declaring that Defendants' actions, as set out above, violate the California Privacy Act, Cal. Penal Code § 637.6;

C. Awarding injunctive and other equitable relief as necessary to protect the interests of the Class, including, *inter alia*, an order prohibiting Defendants from engaging in the wrongful and unlawful acts described herein;

D. Awarding statutory damages of $5,000 per violation pursuant to the California Privacy Act, Cal. Penal Code § 637.2(a)(1);

E. Awarding Plaintiff and the Class their reasonable litigation expenses and attorneys' fees;

F. Awarding Plaintiff and the Class pre- and post-judgment interest, to the extent allowable; and

G. Awarding such other and further relief as equity and justice may require.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury of all issues so triable.

Respectfully submitted,

**MIGUEL GARCIA**, individually and on behalf of all others similarly situated,

Dated: February 7, 2014     By: /s/ Mark Eisen
     One of Plaintiff's Attorneys

Mark Eisen (SBN - 289009)
meisen@edelson.com
EDELSON PC
555 West Fifth Street, 31st Floor
Los Angeles, California 90013
Tel: 213.533.4100
Fax: 213.947.4251

Jay Edelson*
jedelson@edelson.com
Rafey S. Balabanian*
rbalabanian@edelson.com
Benjamin S. Thomassen*
bthomassen@edelson.com

Jack Yamin*
jyamin@edelson.com
Chandler R. Givens*
cgivens@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

*Pro hac vice admission to be sought.

Attorneys for Plaintiff and the Putative Class