| | |
|---|---|
| KEKER & VAN NEST LLP<br>RACHAEL E. MENY - #178514<br>rmeny@kvn.com<br>JENNIFER A. HUBER - #250143<br>jhuber@kvn.com<br>MICHELLE S. YBARRA - #260697<br>mybarra@kvn.com<br>633 Battery Street<br>San Francisco, CA  94111-1809<br>Telephone:     (415) 391-5400<br>Facsimile:      (415) 397-7188<br><br>Attorneys for Defendant<br>LYFT, INC. | CROWELL & MORING LLP<br>J. DANIEL SHARP - #131042<br>dsharp@crowell.com<br>275 Battery Street, 23rd Floor<br>San Francisco, CA  94111<br>Telephone:     (415) 986-2800<br>Facsimile:      (415) 986-2827<br><br>Attorneys for Defendant<br>ENTERPRISE HOLDINGS, INC. |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| MIGUEL GARCIA, individually and on behalf of all others similarly situated,<br><br>            Plaintiff,<br><br>       v.<br><br>ENTERPRISE HOLDINGS, INC., d/b/a Zimride, a Missouri corporation, and LYFT INC., a Delaware corporation,<br><br>            Defendants. | Case No. 4:14-cv-00596-SBA<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>Date:        June 10, 2014<br>Time:       1:00 p.m.<br>Dept:        Courtroom 1, 4th Floor<br>Judge:      Hon. Saundra B. Armstrong<br><br>Date Filed: February 7, 2014<br><br>Trial Date: None set |

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 4:14-cv-00596-SBA

817342

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ...................................................................................................................1

II. BACKGROUND .....................................................................................................................2

    A. California enacted Section 637.6 to address potential abuse of personal information provided by private employers to rideshare contractors. .....................2

    B. Zimride was founded in 2007 as a peer-to-peer service for individual ride-seekers to connect with individual drivers. ................................................................3

    C. Plaintiff used Zimride to find rides between northern and southern California on three occasions. ...........................................................................................................4

III. ARGUMENT ...........................................................................................................................5

    A. Based upon its plain language and legislative history, Section 637.6 does not apply to Defendants' peer-to-peer ridesharing service. ....................................5

        1. Section 637.6 must be interpreted in accordance with California's rules of statutory interpretation. ......................................................................6

        2. Section 637.6 does not apply to Defendants. .............................................6

        3. Section 637.6 does not apply to Defendants' alleged disclosure of rider information to Mixpanel. ...................................................................8

    B. Plaintiff fails to adequately allege that Defendants disclosed his information without consent. ..........................................................................................10

        1. Plaintiff's threadbare allegations of disclosure and lack of consent are insufficient to state a claim. ................................................................11

        2. Plaintiff's purported lack of consent argument is contradicted by other allegations in the Complaint and judicially-noticeable facts. ...........12

IV. CONCLUSION ......................................................................................................................15

i

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 4:14-cv-00596-SBA

817342

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Abdul-Jabbar v. Gen. Motors Corp.*
  85 F.3d 407 (9th Cir. 1996) .................................................................................................. 11

*Ashcroft v. Iqbal*
  556 U.S. 662 (2009) ............................................................................................ 5, 10, 11, 12, 15

*Bell Atlantic Corp. v. Twombly*
  550 U.S. 544 (2007) ........................................................................................................... 5, 12

*Cairo, Inc. v. Crossmedia Servs., Inc.*
  2005 WL 756610 (N.D. Cal. Apr. 1, 2005) ............................................................................ 13

*Clapper v. Amnesty Int'l USA*
  133 S. Ct. 1138 (2013) ............................................................................................................ 10

*Ctr. for Biological Diversity v. Jackson*
  2012 WL 3835097 (N.D. Cal. Sept. 4, 2012) ........................................................................... 5

*Fteja v. Facebook, Inc.*
  841 F. Supp. 2d 829 (S.D.N.Y. 2012) ..................................................................................... 13

*In re Gilead Scis. Sec. Litig.*
  536 F.3d 1049 (9th Cir. 2008) .................................................................................................. 5

*In re Google, Inc. Privacy Policy Litig.*,
  2013 WL 6248499 (N.D. Cal. Dec. 3, 2013) .......................................................................... 11

*In re iPhone Application Litig.*
  2011 WL 4403963 (N.D. Cal. Sept. 20, 2011) ....................................................................... 10

*In re Reaves*
  285 F.3d 1152 (9th Cir. 2002) .................................................................................................. 6

*In re Stac Electronics Sec. Litig.*
  89 F.3d 1399 (9th Cir. 1996) .................................................................................................. 14

*Knievel v. ESPN*
  393 F.3d 1068 (9th Cir. 2005) ................................................................................................ 14

*Leocal v. Ashcroft*
  543 U.S. 1 (2004) ...................................................................................................................... 8

*Lujan v. Defenders of Wildlife*
  504 U.S. 555 (1992) ................................................................................................................ 10

*Molnar v. 1-800-Flowers.com, Inc.*
  2008 WL 4772125 (C.D. Cal. Sept. 29, 2008) ....................................................................... 13

ii
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS FIRST
AMENDED CLASS ACTION COMPLAINT
Case No. 4:14-cv-00596-SBA

817342

*Record Museum v. Lawrence Township*
   481 F.Supp. 768 (D.N.J.1979) .................................................................................... 3

*Register.com, Inc. v. Verio, Inc.*
   356 F.3d 393 (2d. Cir. 2004) .................................................................................... 13

*Robins v. Spokeo*
   742 F.3d 409 (9th Cir. 2014) .................................................................................... 10

*Swift v. Zynga Game Network*
   805 F. Supp. 2d 904 (N.D. Cal. 2011) ................................................................. 13, 14

*Ticketmaster L.L.C. v. RMG Techs., Inc.*
   507 F.Supp.2d 1096 (C.D. Cal. 2007) ...................................................................... 13

*Wang v. Asset Acceptance, LLC*
   681 F. Supp. 2d 1143 (N.D. Cal. 2010) ................................................................... 5, 8

*Yunker v. Pandora Media, Inc.*
   2013 WL 1282980 (N.D. Cal. March 26, 2013) ........................................................ 10

**State Cases**

*Harrott v. County of Kings*
   25 Cal. 4th 1138 (2001) .......................................................................................... 6, 8

*Harwich v. Superior Court*
   21 Cal. 4th 272 (1999) ................................................................................................ 6

*Watte v. Crawford*
   10 Cal. 4th 743 (1995) ................................................................................................ 6

**Federal Statutes**

23 U.S.C. § 146 ................................................................................................................ 2

**State Statutes**

Cal. Civil Code § 3344 .................................................................................................... 11

Cal. Penal Code § 637.2 .................................................................................................. 10

Cal. Penal Code § 637.2(a)(1) ........................................................................................... 4

Cal. Penal Code § 637.6 ........................................................................................... *passim*

Cal. Penal Code § 637.6(a) ........................................................................... 2, 7, 8, 9, 10

Cal. Penal Code § 637.6(b) ............................................................................................... 7

**Federal Rules**

Fed. R. Civ. Proc. 8 ......................................................................................................... 12

Fed. R. Civ. Proc. 12(b)(6) ............................................................................................. 14

iii
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 4:14-cv-00596-SBA

817342

Fed. R. Evid. 106 ................................................................................................................. 4

**Other Authorities**

http://en.wikipedia.org/wiki/History_of_the_World_Wide_Web ..................................................... 3

817342

## I. INTRODUCTION

Through his First Amended Class Action Complaint[1] (the "Complaint"), Plaintiff attempts to fabricate a class action lawsuit based on the thinnest of allegations and a strained reading of a narrowly-tailored provision of the California Privacy Act that has no application to the facts alleged. Defendants Lyft, Inc. and Enterprise Holdings, Inc. ("Defendants") are the former owner and current owner, respectively, of the Zimride internet-based ridesharing platform. Zimride offers an online real-time peer-to-peer ride-matching platform to pair members who want a ride to their destination with other members willing to offer those rides. Since its launch in 2007, Zimride has become one of the most popular ridesharing platforms in the United States. Plaintiff alleges that he has used Zimride on three occasions since he became a user in July 2012.

Plaintiff's Complaint is premised on one claim, that due to his use of Zimride, Defendants transmitted basic information about Plaintiff (gender, age, zip code, metropolitan region, and ID number) to a third-party analytics company, Mixpanel, retained by Defendants to assist them in optimizing their ridesharing service. Plaintiff alleges that the transmission of this information from Zimride to Mixpanel violates California Penal Code § 637.6 ("Section 637.6").

Section 637.6 was enacted in 1990 (before commercial use of the Internet) to address the proliferation of consultants engaged in the business of setting up commuter carpool and vanpool programs who might share participating employees' personal information with third parties without their employees' knowledge or consent. While Defendants are aware of no published cases concerning this statute since its passage nearly 25 years ago, its plain language makes clear that Section 637.6 only applies to (1) a particular set of potential defendants, *i.e.*, those "***person[s] who … acquire***[] or ha[ve] access to personal information concerning an individual … ***for the purpose of assisting private entities*** in the establishment or implementation of carpooling or ridesharing programs …."—programs which are narrowly defined by the statute; and (2) a particular type of conduct, *i.e.*, disclosing or using information acquired in that manner "for any

---

[1] This Motion to Dismiss is the first time that the sufficiency of Plaintiff's Complaint has been raised to the Court. Plaintiff voluntarily sought to amend his original complaint after realizing that certain background facts pled in the original complaint were incorrect.

1
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS FIRST
AMENDED CLASS ACTION COMPLAINT
Case No. 4:14-cv-00596-SBA

other purpose without prior written consent …." Cal. Penal Code § 637.6(a) (emphasis added).

Plaintiff's Complaint does not allege the type of defendant or the type of conduct covered by Section 637.6, because Plaintiff does not, and cannot, allege that these Defendants "assist[ed] private entities" in establishing or implementing a covered carpool or ridesharing program, or that Defendants disclosed or used Plaintiff's information for any "other purpose" besides implementing Zimride's ridesharing platform. What is more, the Complaint contains only vague allegations of unspecified "injury" and "disclosure" and omits reference to Zimride's Terms of Service and Privacy Policy, which establish that Plaintiff consented to any alleged disclosure. Thus, as set forth below, Plaintiff's Complaint is deficient and must be dismissed with prejudice.

## II.     BACKGROUND

### A.     California enacted Section 637.6 to address potential abuse of personal information provided by private employers to rideshare contractors.

Since the 1970s, policymakers have promoted the benefits that could be realized if fewer commuters drove themselves to work alone in their own cars and instead joined commuter carpools. In the last few decades, for example, the federal government has advanced legislation to encourage the use of carpools and vanpools. *See* Declaration of Michelle Ybarra ("Ybarra Decl."), Ex G (23 U.S.C. § 146 (1978 statute authorizing funding of "projects designed to encourage the use of carpools and vanpools")); Ex. H (1980 Executive Order requiring federal agencies to promote ridesharing by federal government personnel). Accordingly, rideshare companies emerged to assist private employers in setting up carpool and vanpool programs. *See* Ybarra Decl., Ex. I at 13 (of 13).

At the time of Section 637.6's enactment, existing statutes prohibited the disclosure of personal data under certain circumstances, but not in the context of an employer's implementation of a carpool program. *Id.*, Ex. J at 8 (of 10). In 1990, a Caltrans rideshare contractor helped draft California legislation regulating the use of personal data that employers provided to commuter rideshare consultants, ultimately leading to the enactment of Section 637.6. *Id.*, Ex. I at 4 (of 13). The Senate Judiciary Committee noted that the work of these third-party consultants "requires compilation of a record of personal information regarding the [ridesharing] participants,

2
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 4:14-cv-00596-SBA

817342

information which is susceptible to abuse if in the wrong hands." *Id.*, Ex. I at 13 (of 13). The bill was amended "to make clear that [rider] information <u>can</u> be disclosed without written approval for use in developing the specified programs." *Id.*, Ex. J at 5 (of 10) (emphasis in original). As finally adopted, the bill made clear that the only regulated parties are those persons who obtain personal information "for the purposes of assisting private entities" in establishing such programs and that disclosure or use of rider information for the purpose of implementing those programs is not prohibited. Cal. Penal Code § 637.6. Neither the statute nor its legislative history refer to the Internet, because the World Wide Web did not become publicly available until after the statute was enacted.[2]

### B. Zimride was founded in 2007 as a peer-to-peer service for individual ride-seekers to connect with individual drivers.

One of the many innovations of the Internet has been the ease of facilitating peer-to-peer transactions. Many prominent Internet platforms such as eBay, Craigslist, VRBO, and Autotrader.com use peer-to-peer business models. Defendant Lyft, Inc. ("Lyft") founded Zimride in 2007 as a web-based, peer-to-peer ridesharing business.[3] *See* Compl. ¶¶ 2, 12. In 2013, Defendant Enterprise Holdings, Inc. ("Enterprise") acquired the assets related to the Zimride ridesharing platform. *Id.* at ¶ 13.

Zimride is available to members of the general public. *Id.*, ¶¶ 2, 15-18. To use Zimride's ridesharing platform, a user must first sign up at www.zimride.com. *Id.* at ¶ 14. Upon clicking "Sign up" on the Zimride homepage, a pop-up dialogue box is displayed instructing the user to "sign up with Facebook." *Id.* at ¶ 15, Fig. 2. Once the user clicks the "sign up with Facebook" button, a display screen appears notifying the user that "Zimride will receive the following info: your public profile, friend list, email address, birthday, work history, education history, events,

---

[2] *See, e.g.*, http://en.wikipedia.org/wiki/History_of_the_World_Wide_Web (accessed April 22, 2014) (citing August 21, 1991, as "the debut of the Web as a publicly available service on the Internet"). Defendants do not offer these historical facts to dispute Plaintiffs' factual allegations, but merely to note the historical context of the statute invoked, which is a matter of judicial notice. *See, e.g., Record Museum v. Lawrence Township*, 481 F.Supp. 768, 771 (D.N.J.1979).

[3] Although Defendants do not believe that all of Plaintiff's allegations as true, they do not dispute these factual allegations for purposes of this Motion to Dismiss, except where judicial notice of correct facts is appropriate.

3
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 4:14-cv-00596-SBA

817342

hometown, interests, current city, personal description and likes." *Id.* at ¶ 16, Fig. 3. At the bottom of this same screen, hyperlinks to Zimride's "App Terms" and "Privacy Policy" are presented to the user immediately across from an "Okay" button that a user must click to complete sign up and use the Zimride service. Ybarra Decl., Ex. C.[4] After being presented with hyperlinks to Zimride's Terms of Service and Privacy Policy, a user must click "Okay" to complete sign up and use the Zimride service. *Id.* Once logged in, a Zimride user may search for posted rides and pick a ride that matches his or her criteria, or request that she be matched with a willing driver. *See* Compl. ¶ 17. There is no requirement that Zimride users be participants in any private entity's commuter or carpooling program. *Id*.

      **C.**    **Plaintiff used Zimride to find rides between northern and southern California on three occasions.**

On March 28, 2014, Plaintiff Miguel Garcia ("Plaintiff") filed the Complaint, which asserts a single cause of action for violation of Section 637.6. Plaintiff claims damages in the amount of $5,000 per violation pursuant to California Penal Code § 637.2(a)(1), which provides that "any person who has been injured by a violation of this chapter" may bring an action for the greater of $5,000 or three times the amount of actual damages.

Plaintiff does not allege that he used Zimride services for commuter carpooling. Instead, Plaintiff alleges that Zimride "heavily markets to college students" and that he signed up for Zimride services on his computer in July 2012 and in August 2012, and submitted details for a ride between southern and northern California. Compl. ¶¶ 12, 31. Plaintiff alleges that he subsequently submitted ride information through Zimride's mobile website in May and December, 2013, again seeking rides between southern and northern California. *Id.* ¶ 32. Plaintiff claims that in connection with three of these uses, his "personal information" was transmitted to third-party analytics company Mixpanel without his knowledge or consent. *Id.* at

---

[4] Plaintiff's Complaint implies that Figure 3 is an accurate depiction of the pop-up screen displayed to a user during the sign-up process for Zimride's services. Rather, Figure 3 is an incomplete screenshot; it cuts off the hyperlinks to Zimride's Terms of Service and Privacy Policy, which are part of the ***same display*** Plaintiff selectively quotes from in Figure 3. As discussed in more detail at Section III.B.2, *infra*, Defendants move for judicial notice of the complete and accurate screenshot of the sign-up process. *See* Fed. R. Evid. 106.

4
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 4:14-cv-00596-SBA

817342

¶¶ 33-34. The entirety of Plaintiff's allegations concerning his own "[e]xperience with Defendants' [s]ervices" are set forth in paragraphs 31 to 34 of the Complaint; his allegations do not mention any private entity's commuter carpool program, or say anything about any injury he suffered from the use or disclosure of his information, or that his information was used or disclosed for a purpose other than implementation of Zimride's services. *Id.* ¶¶ 31-34.

### III.  ARGUMENT

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 579 (2007)). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. 662, at 1940. In considering whether a complaint is sufficient to state a claim, the court must accept as true all of the factual allegations in the complaint. *Id.* at 1950. However, the court need not accept as true "allegations that contradict matters properly subject to judicial notice or by exhibit" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quotations omitted). It is also well established that a court may grant a motion to dismiss where its interpretation of statutory language precludes a plaintiff from stating a claim under the facts alleged. *See, e.g., Ctr. for Biological Diversity v. Jackson*, 2012 WL 3835097, at *4 (N.D. Cal. Sept. 4, 2012) (granting motion to dismiss based on statutory interpretation of the Endangered Species Act); *Wang v. Asset Acceptance, LLC*, 681 F. Supp. 2d 1143, 1148 (N.D. Cal. 2010).

  **A.** **Based upon its plain language and legislative history, Section 637.6 does not apply to Defendants' peer-to-peer ridesharing service.**

At the threshold, Plaintiff's claim fails for two fundamental reasons. First, Plaintiff attempts to apply Section 637.6 to these Defendants even though the statute's plain terms make clear that it does not so apply. Second, Plaintiff attempts to apply Section 637.6 to conduct not prohibited by the statute. For these reasons, dismissal is warranted.

5
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 4:14-cv-00596-SBA

817342

### 1. Section 637.6 must be interpreted in accordance with California's rules of statutory interpretation.

A federal court interpreting a California statute applies California's rules of statutory interpretation, which require that courts "'give effect to statutes according to the usual, ordinary impact of the language employed in framing them.'" *In re Reaves*, 285 F.3d 1152, 1156 (9th Cir. 2002) (citation omitted). The Court should seek to give meaning to every word and phrase in the statute with reference to "the object to be achieved and the evil to be prevented by the legislation." *Harwich v. Superior Court*, 21 Cal. 4th 272, 276 (1999). If there is doubt as to the meaning of the statute, the Court will "examine the history and background of the statutory provision in an attempt to ascertain the most reasonable interpretation of the measure." *Watte v. Crawford*, 10 Cal. 4th 743, 751 (1995). In construing statutes like Section 637.6 that impose criminal penalties, California courts follow the rule of lenity. *See Harrott v. County of Kings,* 25 Cal. 4th 1138, 1154 (2001) (citations omitted).

### 2. Section 637.6 does not apply to Defendants.

Section 637.6 is a criminal statute passed in 1990 to address a particular set of circumstances: improper use of commuters' personal information by third-party contractors who receive such personal information when they help to establish carpool and vanpool programs for private entities. Ybarra Decl., Ex. K at 2 (of 3). It provides in relevant part:

> No person who, in the course of business, acquires or has access to personal information concerning an individual, including, but not limited to, the individual's residence address, employment address, or hours of employment, ***for the purpose of assisting private entities in the establishment or implementation of carpooling or ridesharing programs***, shall disclose that information to any other person or use that information for any other purpose without the prior written consent of the individual.

Cal. Penal Code § 637.6 (emphasis added). By its plain terms, the statute does not apply to Defendants for several reasons.

First, the statute posits the existence of four parties: (i) a *private entity* that seeks to establish or implement a carpooling or ridesharing program; (ii) a person who "assists" that private entity in establishing such programs; (iii) an individual whose personal information is known to the private entity; and (iv) an "other person" to whom disclosure is made for "any other

6

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS FIRST
AMENDED CLASS ACTION COMPLAINT
Case No. 4:14-cv-00596-SBA

817342

purpose" than establishing the private entity's carpool program. *See id*. By its plain terms, the statute only proscribes the conduct of those who "assist" some private entity in this effort. *Id*. Plaintiff makes no allegation that Defendants were "assisting private entities" in the establishment of "carpools, vanpools, buspools … [or] other demand management strategies." *See id*. Rather, as Plaintiff alleges, Defendants are the private entities which have established the Zimride ridesharing platform. Compl. ¶ 2. The statute does not impose liability on such private entities.

Second, the statute also only applies to persons who engage in particular conduct relating to a specific type of program, *i.e.,* those who "assist[] … in the establishment… of ***carpooling or ridesharing programs.***" Cal . Penal Code § 637.6(a) (emphasis added). "Carpooling or ridesharing programs" are defined to include only "the formation of carpools, vanpools, buspools, the provision of transit routes, rideshare research, and the development of other demand management strategies such as variable working hours and telecommuting." Cal. Penal Code § 637.6(b); *see also* Ybarra Decl., Ex. I at 4 (of 13) (legislative history indicating that this Section was created to regulate the use of personal data that employers provided to commuter rideshare agencies). Plaintiff, however, does not allege that Defendants run the type of commuter carpooling or ridesharing program covered by the statute, *i.e.,* "carpools, vanpools, buspools, . . . [or] other demand management strategies." *See* Compl. Instead, Plaintiff's allegations make clear that Zimride is a peer-to-peer ridesharing platform which he used to find a long distance ride between northern and southern California on three occasions many months apart. Compl. ¶¶31, 32. Both the statute and its legislative history indicate that the Legislature intended Section 637.6 to regulate behavior connected with commuter carpooling—not the occasional road trip. *See e.g., supra* at II.A. Section 637.6(b) does not apply to the Zimride platform.

Third, Section 637.6 also applies only to persons who "acquires or ha[ve] access to personal information … for the purpose of assisting private entities in the establishment of…carpooling or ridesharing programs." Here, Plaintiff directly and knowingly entered his personal information onto the Zimride platform; Defendants did not "acquire" or "ha[ve] access to" Plaintiff's personal information in the course of "assisting private entities." As Plaintiff alleges, he and all other users log directly onto the Zimride platform and "input details about an

7

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 4:14-cv-00596-SBA

817342

upcoming trip to solicit fellow passengers or purchase a seat in a ride previously submitted by another Zimride user." Compl. ¶ 2.  The legislative history makes clear that in enacting Section 637.6, the Legislature was concerned about employees whose personal information might be shared with transportation consultants without their knowledge or consent. *See e.g., supra* at II.A.  Nothing in the statute or its legislative history suggests that the Legislature intended Section 637.6 to regulate peer-to-peer communications in which individuals voluntarily input their own personal information.

In short, both the language of the statute and its legislative history support the conclusion that Section 637.6 has no application to peer-to-peer platforms such as Zimride or to Defendants such as these who own or operate such a platform.  Because the statute imposes criminal penalties, California's "rule of lenity" requires that the statute be interpreted in Defendants' favor. *See Harrott*, 25 Cal. 4th at 1154.  Moreover, Plaintiff's claim must fail because the most natural reading of this statute provides no support for the interpretation he proposes. *See Leocal v. Ashcroft*, 543 U.S. 1, 9 (2004) (courts look to the text's "ordinary or natural meaning").  And "[b]ecause alleging other facts will not cure this deficiency," this claim should be dismissed without leave to amend. *See Wang*, 681 F. Supp. 2d at 1148.

**3.   Section 637.6 does not apply to Defendants' alleged disclosure of rider information to Mixpanel.**

Even assuming *arguendo* that the statute is applicable to Defendants and Zimride, Plaintiff's claim also fails because he does not allege any facts to show that Defendants' disclosure of his information to Mixpanel was a use prohibited by the statute, *i.e.*, a use "**for any other purpose**" besides implementing Zimride's ridesharing platform.  Cal. Penal Code § 637.6(a) (emphasis added).  This is a key failing as the legislative history confirms that the bill was specifically amended "to make clear that information can be disclosed without written approval for use in developing the specified programs." *See* Ybarra Decl., Ex. J at 5 (of 10) (emphasis in original); *see also id.* at 6 ("This bill would prohibit the disclosure, without prior written consent, of personal information about an individual gained when assisting private entities in the establishment of carpooling or ridesharing programs ***unless it is for those program***s")

8
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 4:14-cv-00596-SBA

817342

(emphasis added).

Accordingly, to state a claim for violation of Section 637.6(a), Plaintiff must at a minimum allege that Defendants disclosed or used his personal information for a purpose *other than* the purpose of "assisting private entities in the establishment or implementation of carpooling or ridesharing programs."  Cal. Penal Code § 637.6(a); *see also* Ybarra Decl. Ex. I at 5 (of 13) and Ex. J at 5 (of 10) (legislative analysis discussing concerns that early versions of bill were "unclear on whether it applies only to releasing information for purposes other than ridesharing," an ambiguity clarified by later amendments to the bill which made clear that "information can be disclosed without written approval for use in developing the specified programs") (emphasis in original).

Despite this requirement, Plaintiff never alleges that Zimride disclosed his personal information to Mixpanel for any purpose other than the lawful purpose the statute contemplates, such as operation of the Zimride platform.  *See* Compl.  In fact, although Plaintiff does not allege *why* Zimride sent information to Mixpanel, he repeatedly refers to Mixpanel as a "data analytics company" and alleges that Zimride sent information to the "third party data analytics company Mixpanel," implying that information was sent to Mixpanel for analytics reasons connected with Zimride's business.[5]  Compl. ¶¶ 4, 19.  As Plaintiff has not, and cannot, allege that Defendants sent such information to Mixpanel for an improper purpose, Plaintiff cannot establish a claim under Section 637.6.

Nor does the Complaint allege what "personal information" of Plaintiff's was allegedly disclosed.  Instead, the Complaint alleges generally that Mixpanel receives a user's gender, age, zip code, metropolitan region, "a link to a Zimride webpage that shows full details about the user's trip as well a [*sic*] link to their Facebook profile," and an alphanumeric "Distinct ID" number.  Compl. ¶19.  But none of this basic information meets this definition of "personal information" under the statute, *i.e.,* "the individual's residence address, employment address, or

---

[5] Zimride's judicially noticeable Privacy Policy further confirms this fact as it says that "we may share your personal information with our…contractors and service providers so they can provide us with support services … ".  *See* Ybarra Decl Exs. D at 11, E at 11, and F at 6.

9
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 4:14-cv-00596-SBA

817342

hours of employment." Cal. Penal Code § 637.6(a).  Even assuming relevant "personal information" is contained *within* the link to the Zimride webpage or on Plaintiff's Facebook profile, Plaintiff has not alleged that those links are accessible by Mixpanel; indeed, a user's privacy settings with respect to those links may dictate otherwise.  Thus, the Complaint fails even to offer "'a formulaic recitation of the elements of a cause of action,'" much less any facts showing that Defendants disclosed Plaintiff's personal information for an improper purpose.  *See Iqbal*, 556 U.S. at 678.[6]  For these reasons too, Plaintiff's claim should be dismissed.

### B. Plaintiff fails to adequately allege that Defendants disclosed his information without consent.

The Complaint also fails because it contains only boilerplate, conclusory allegations that Defendants disclosed his information to Mixpanel without his knowledge or consent.  Compl. ¶¶ 33-34, 46.  This conclusory allegation, without more, is insufficient to state a claim and is not

---

[6] Plaintiff's injury allegations also do not establish the injury in fact required to establish Article III standing.  *See Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1147 (2013) (citation omitted) (Article III plaintiff must show he has suffered injury in fact that is "concrete, particularized and actual or imminent").  Plaintiff first alleges that Defendants' disclosures exposed him to a threat of future, inchoate "privacy risks" (*i.e.*, a "threat" of others gaining access or the "possibility" of intrusion or breach), but he does not allege that he himself suffered any such harm.  Compl. ¶¶ 30, 47.  These allegations are insufficient because such a risk of injury is not concrete and particularized as to this *Plaintiff* and do not satisfy Article III's requirement that the threatened injury be "*certainly impending*" to constitute injury in fact.  *See id.* at 1147 (emphasis added); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 n.1 (1992).  Furthermore, even if Plaintiff had alleged a particularized injury, numerous cases in this District have held that collection or use of personal information, without more, is insufficient to create the injury-in-fact required for Article III standing.  *See, e.g., In re iPhone Application Litig.*, 2011 WL 4403963 (N.D. Cal. Sept. 20, 2011) (no injury in fact from alleged collection and tracking of plaintiffs' personal information); *Yunker v. Pandora Media, Inc.*, 2013 WL 1282980 (N.D. Cal. March 26, 2013) (no standing based on theory of alleged diminution in value of personally identifiable information where defendant used plaintiff's data for advertising).

Plaintiff attempts to avoid this deficiency by also alleging that his "statutorily defined right to privacy" has been violated.  Compl. ¶ 47.  This allegation, however, does not establish Article III standing here because, although standing may sometimes be premised on the violation of certain statutory rights, a plaintiff must allege facts sufficient to show that he has actually suffered injury if the statute at issue requires a separate showing of injury.  *Compare Robins v. Spokeo*, 742 F.3d 409, 412 (9th Cir. 2014) ("The injury required by Article III can exist solely by virtue of 'statutes creating legal rights, the invasion of which creates standing'") to *In re iPhone Application Litig.*, 2011 WL 4403963, at *6 (N.D. Cal. Sept. 20, 2011) (no Article III standing because plaintiffs "do not allege a violation of [a] statute which does not require a showing of injury").  The California Privacy Act at issue here provides that a civil claim may be brought only by a "person *who has been injured*." Cal. Penal Code § 637.2 (emphasis added).  Thus, while Section 637.2(c) is clear that Plaintiff need not have suffered actual damages to sue, that provision does not remove the requirement that a plaintiff must suffer some actual injury.  Plaintiff's allegations regarding a risk of possible, future injury do not satisfy Article III's requirements.

10
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 4:14-cv-00596-SBA

817342

supported by Plaintiff's other allegations. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

### 1. Plaintiff's threadbare allegations of disclosure and lack of consent are insufficient to state a claim.

Section 637.6 prohibits disclosure "without the prior written consent of the individual." *See* Cal. Penal Code § 637.6. Although Defendants are unaware of any cases addressing the elements a plaintiff must allege to state a cause of action under Section 637.6, other California statutes that prohibit the use of a person's information without prior consent require adequate allegations concerning lack of consent. *See, e.g., Abdul-Jabbar v. Gen. Motors Corp.*, 85 F.3d 407, 414 (9th Cir. 1996) (a statutory claim for misappropriation of likeness under Cal. Civil Code § 3344 requires plaintiff specifically allege lack of consent).

*In re Google, Inc. Privacy Policy Litig.* is instructive. There, plaintiffs alleged that Google did not obtain consent to use their name or likeness in advertisements associated with its "+1" feature, in violation of Cal. Civil Code § 3344. 2013 WL 6248499, *13 (N.D. Cal. Dec. 3, 2013). The court found that plaintiffs' "threadbare allegation" did not adequately plead that Google had not obtained consent. *Id*. The Court also noted that other allegations in the Complaint showed that plaintiffs voluntarily clicked on the "+1" feature and that Google disclosed the feature. "Without some contradictory allegations," claiming "that Google did not adequately disclose how the feature worked, [or] a theory of how clicking on the '+1' feature did not demonstrate consent," the Court found lack of consent was not adequately pled. *Id*.

Plaintiff here fails to plead *any* facts around consent that allow "the Court to draw the reasonable inference that [Defendants are] liable for the misconduct alleged." *Iqbal*, 556 U.S. 678. Instead, the Complaint contains only a "threadbare allegation" that Defendants disclosed Plaintiff's personal information to Mixpanel without his consent—precisely the kind of allegations rejected by *Iqbal* and *In re Google*. Compl. ¶¶ 33-34, 46.

Plaintiff's allegations are similarly deficient with respect to the form and the content of the alleged disclosure to which he purportedly did not consent. The Complaint vaguely alleges that a user's personal information is sent "digitally" and includes "a link to a webpage"

11
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 4:14-cv-00596-SBA

817342

containing "a link to th[e] Facebook profiles" of other, unidentified users. Compl. ¶¶19, 25. But Plaintiff does not plead *any* facts as to how his *own* information was disclosed. Nor does Plaintiff identify the URL for the webpage containing Plaintiff's personal information that Defendants allegedly disclosed to Mixpanel, or include screenshots of that webpage, or any other facts that "give [Defendants] fair notice of what the . . . claim is and the grounds on which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). A complaint that tenders such "'naked assertion[s]' devoid of 'further factual enhancement'" falls well short of the pleading standard announced in Rule 8, and must be dismissed. *Iqbal*, 556 U.S. 678 (internal citation omitted).

### 2. Plaintiff's purported lack of consent argument is contradicted by other allegations in the Complaint and judicially-noticeable facts.

Even assuming Plaintiff's threadbare allegations about consent satisfy the pleading standard, Plaintiff's claim is contradicted by other allegations in the Complaint. The Complaint alleges that Plaintiff voluntarily signed up on his computer for Zimride services in July 2012 (Compl. ¶ 32) and includes *partial* screenshots shown to the user during the sign-up process. Compl. ¶¶15-17. Tellingly, Plaintiff's Figure 3, which purports to reflect the screen a user sees during the sign-up process, only displays half the webpage.[7] Figure 3 omits the hyperlinks to Defendants' Terms of Service and Privacy Policy presented to the user on that screen, as well as the "Okay" button that a user must click to accept those terms and complete the sign-up process:

///
///
///
///

---

[7] Figures 1 and 2 also reflect incomplete screenshots of the Zimride homepage and the "Sign up with Facebook" page. Plaintiff cuts off the bottom half of these pages which both display a hyperlink labeled "Terms & Privacy" linking to the full text of Zimride's Terms of Use and Privacy Policy. Complete copies of the Zimride homepage and "Sign up with Facebook page" are attached to the Ybarra Decl. at Exs. A and B. Defendants file concurrently herewith a Request for Judicial Notice regarding Exhibits A through K of the Ybarra Decl.

12
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 4:14-cv-00596-SBA

817342



That omission is significant.  "While new commerce on the Internet has exposed courts to many new situations, it has not fundamentally changed the principles of contract." *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 403 (2d. Cir. 2004).  And one such principle is that "'[m]utual manifestation of assent, whether by written or spoken word or by conduct, is the touchstone of contract.'" *Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 835 (S.D.N.Y. 2012) (citation omitted).

Accordingly, courts in this Circuit have repeatedly held that "browsewrap" agreements, where the terms of use are visible to a user by clicking a hyperlink like those at issue here, are valid and enforceable. *See, e.g., Swift v. Zynga Game Network*, 805 F. Supp. 2d 904, 912 (N.D. Cal. 2011) (hyperlink sufficient to put plaintiff on notice of terms of service); *Cairo, Inc. v. Crossmedia Servs., Inc.*, 2005 WL 756610 (N.D. Cal. Apr. 1, 2005) (plaintiff's use of web site binds it to forum selection clause); *Ticketmaster L.L.C. v. RMG Techs., Inc.*, 507 F.Supp.2d 1096, 1107 (C.D. Cal. 2007) (Ticketmaster "highly likely to succeed in showing that Defendant received notice of the [hyperlinked] Terms of Use and assented to them by actually using the website").  Moreover, "a party's use of a website may be sufficient to give rise to an inference of assent to the Terms of Use contained therein." *Molnar v. 1-800-Flowers.com, Inc.*, 2008 WL

13
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS FIRST
AMENDED CLASS ACTION COMPLAINT
Case No. 4:14-cv-00596-SBA

817342

4772125, at *7 (C.D. Cal. Sept. 29, 2008).

In *Swift v. Zynga Game Network*, the Court considered whether a browsewrap agreement containing an arbitration clause was enforceable against plaintiff, where the terms of service were presented via hyperlink following an "Allow" button that also related to allowing Zynga access to plaintiff's Facebook information. 805 F. Supp. 2d at 911. Plaintiff contended that this "modified clickwrap" was insufficient to put her on notice of or bind her to Zynga's terms of service. The Court disagreed, finding that on-screen presentations "providing a user with access to the terms of service and requiring a user to affirmatively accept the terms, even if the terms are not presented on the same page as the acceptance button, are sufficient." *Id.* at 912.

Here, as in *Swift*, the Zimride Terms of Service and Privacy Policy were presented to Plaintiff alongside an "Okay" button that also related to allowing Zimride to access Plaintiff's Facebook information. Notably, hyperlinks to the Terms of Service and Privacy Policy are directly adjacent to the "Okay" button that the user must click to signal his consent. *See supra* at 13. As in *Swift*, presentation of those agreements via hyperlinks provided Plaintiff "notice and an opportunity to review terms of service prior to acceptance." *Id.* at 911-912. The Terms of Service and Privacy Policy required Plaintiff to consent to their terms before using Zimride's service. The Terms of Service state:

> THIS FOLLOWING USER AGREEMENT DESCRIBES THE TERMS AND CONDITIONS ON WHICH ZIMRIDE, INC. OFFERS YOU ACCESS TO OUR SERVICES . . . IF YOU DO NOT AGREE TO BE BOUND BY THE TERMS AND CONDITIONS OF THIS AGREEMENT, PLEASE DO NOT USE OR ACCESS OUR SERVICES OR REGISTER FOR THE SERVICES PROVIDED ON THIS SITE.

*See* Ybarra Decl., Exs. D-F at 1.[8]

The Privacy Policy further put Plaintiff on notice that Defendants may disclose his

---

[8] Generally a court may not consider matters outside the complaint on a motion to dismiss. However, "[d]ocuments whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss." *In re Stac Electronics Sec. Litig.*, 89 F.3d 1399, 1405 n.4 (9th Cir. 1996). The Ninth Circuit has extended this "incorporation by reference" doctrine to situations in which "plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties to do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

personal information to third-parties in connection with providing ride-sharing services:

> ***To operate the Site, including processing your transactions and supporting your activities on the Site, we may share your personal information with our agents, representatives, contractors and service providers so they can provide us with support services*** such as email origination, receipt or support services, customer relationship management services, and order fulfillment. We require these entities not to use your information for any other purpose. . . . ***By using the site, you do hereby represent and warrant that you have read, understand and agree to all terms of this Privacy Policy and Terms of Service.***

*See* Ybarra Decl., Ex. D at 1, 12; Ex. E at 1, 12; and Ex. F at 1, 7 (emphasis added). The disclosure of which Plaintiff complains is precisely the same disclosure described in the Privacy Policy. The Privacy Policy explicitly informs users like Plaintiff that his personal information may be shared in order "[t]o operate the Site," which is in fact the type of disclosure specifically permitted by the statute. Thus, in light of Plaintiff's failure to allege any facts about lack of consent, and the assent required when every Zimride user (as she must) clicks the "Okay" button, Plaintiff's claim that he did not consent is implausible on its face. *See Iqbal*, 556 U.S. at 678. Plaintiff's Complaint must be dismissed.

## IV.   CONCLUSION

For the foregoing reasons, the Court should grant Defendants' Motion to Dismiss.

Dated:  April 28, 2014                                       KEKER & VAN NEST LLP

                                                             By:  */s/ Rachael E. Meny*
                                                                  RACHAEL E. MENY
                                                                  JENNIFER A. HUBER
                                                                  MICHELLE S. YBARRA

                                                                  Attorneys for Defendant
                                                                  LYFT, INC.

Dated:  April 28, 2014                                       CROWELL & MORING LLP

                                                             By:  */s/ J. Daniel Sharp*
                                                                  J. DANIEL SHARP

                                                                  Attorneys for Defendant
                                                                  ENTERPRISE HOLDINGS, INC.

15
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT
Case No. 4:14-cv-00596-SBA

817342